### *J. W. HINSDALE v. B. S. JERMAN.

*Contract—Note—Pledge of Collaterals—Rights of Payee of Note.*

For "money borrowed" J. gave his note to H., and pledged certain shares of stock as collateral security. A contemporaneous agreement between them provided that all assessments upon the stock should be paid equally by them, and the stock should be sold to pay the note, any surplus up to a certain amount to go to J., and all beyond that amount to H. The stock became worthless and unsaleable: *Held*, that the transaction was merely a loan of money secured by collaterals, and the security having become worthless H. is entitled to enforce the secondary liability of the maker of the note.

This was a CIVIL ACTION, tried before *Hoke, J.,* and a jury, at April Term, 1894, of WAKE Superior Court.

Plaintiff declared on a note for $790, bearing date November 12, 1890, as follows:

"$790.          RALEIGH, N. C., November 12, 1890.

" One day after date, for value received in borrowed money, I promise to pay John W. Hinsdale, or order, the sum of $790, with interest at eight per cent, from date.

" This note is secured by the pledge of ten shares of Rockbridge stock, Certificate No. 192.

" B. S. JERMAN."

Defendant admitted execution of note, as presented, but denied his liability on same because by the terms of the entire transaction, of which the note was a part, the plaintiff and defendant became and were partners in the matter, and in case of loss neither was responsible to the other in any amount; and second, the defendant was only to pay the note, in any event, out of the profits of the venture, and in

---

* MACRAE, J., did not sit on the hearing of this case.

case of loss there was no liability on the note on part of defendant.

Defendant tendered the issue: "Were the plaintiff and defendant partners in their dealings in the stock of the Rockbridge Company?" and excepted because same was not tendered as the controlling and only necessary issue in the pleadings.

The Court submitted the issues, and the jury responded thereto as follows:

"1. Was note given by defendant on condition that same should be paid only from the proceeds of sale of Rockbridge stock? Answer. 'No.'

"2. Did B. S. Jerman, on November 12, 1890, execute his note to J. W. Hinsdale for $790 for borrowed money, as set out in the complaint? Ans. 'Yes.'

"3. What are the ten shares of Rockbridge stock worth? Ans. 'Nothing.'

"4. Has any part of said note been paid? Ans. 'No.'

"5. How much does the said Jerman owe said Hinsdale upon said note? Ans. '$790, with interest, less fifty dollars, as of August 25, 1891.'"

The plaintiff offered in evidence the said note, the execution of which was admitted, and rested.

The defendant offered in evidence an agreement, entered into by plaintiff and defendant at the time the note was signed, and which was a part of the entire transaction, with the note, as follows:

"RALEIGH, N. C., November 12, 1890.

"In consideration of the sum of one dollar, paid by John W. Hinsdale to B. S. Jerman, it is agreed between them that the ten shares of stock of the Rockbridge Company, Certificate No. 192, which is pledged to John W. Hinsdale to secure the payment of note of B. S. Jerman for $790, shall be sold first to pay the said note, and that all between that

sum and interest thereon that the said stock shall sell for up to $900 shall be paid to B. S. Jerman, and that all over the sum of $900 that the said stock shall bring shall be divided equally between the said Jerman and Hinsdale.

" It is further agreed that all future assessments upon the said stock shall be paid by the said Jerman and Hinsdale equally, each paying one-half the same, to be refunded to each of them out of the proceeds of the sale of the said stock next after the payment of the said note to the said Hinsdale, and before the payment of any amount to the said Jerman.

" Witness our hands and seals, the day and year first above written.                J. W. HINSDALE.   [SEAL.]

                B. S. JERMAN.     [SEAL.]"

The defendant Jerman testified, after objection by the plaintiff, overruled, and exception, that at the time of said transaction seventy-five per cent. of the face value of the stock had been paid in, and that the remaining twenty-five per cent. of such face value was paid in by the assessment below referred to.   That at the time of said transaction said stock was at a premium in the market (selling on the basis of 114 or 115), the certificate referred to being worth over $900.   That a short time prior thereto the said Hinsdale had himself bought some of said stock at about that figure, and that at the time of said transaction it was expected, by reason of certain negotiations pending between Gen. Fitzhugh Lee, the president of the Rockbridge Company, and an English syndicate, that within a few months said stock would be worth $400 for $100.

It was admitted by both plaintiff and defendant that said Hinsdale, pursuant to said agreement, paid one-half of the first assessment ($150) levied upon said stock after the signing of said agreement, to-wit, on the __ day of ____, 189__, but that he neglected to pay one-half of the second assessment ($100) levied upon said stock after the signing of said agree-

ment, to-wit, on the 25th day of August, 1891, all of which last assessment was paid by the said Jerman.

The defendant rested.

The plaintiff Hinsdale testified that he had visited Glasgow, Virginia, and examined into the affairs of the Rockbridge Company. That the property of the company was mortgaged for far more than its value. That the company was in the hands of a receiver and that the stock was absolutely worth-less. The plaintiff admitted that the said Jerman was entitled to a credit of one-half of the last assessment paid by said Jerman.

On this evidence defendant contended that the note and agreement were part of an entire transaction, the force and effect of which was to constitute plaintiff and defendant partners in this stock, and if said partnership dealing resulted in total loss neither party could recover from the other, but each should lose what he contributed, and in that event the note should simply represent plaintiff's contribution, and defendant would not be liable on same.

Plaintiff contended that the transaction was a loan of the $790, and that he had a right to recover the amount of the same. That the stock was simply one source of payment, as collateral security to the note, and, this being worthless, plaintiff could recover on the note according to its terms.

His Honor charged the jury as follows:

" It is contended, on the part of the defendant, that there was an agreement between them that the note should only be paid out of this stock; but, after hearing the statement, I charge that there was no evidence that there was any such agreement. On the contrary, the evidence is that this note should be paid according to its tenor, and, on the evidence, if you believe it, I charge you to answer this first issue No. That is, in other words, was the note given here given on condition that the same should be paid only from the profits of the stock? There is no such an agreement that should

restrict the payment in that way, and it is your duty on this evidence, if you believe it, to answer the first issue No.

"The second issue is, 'Did B. S. Jerman, on November 12th, execute a note for $790 for borrowed money?' The note is presented here. It is not denied by the defendant, and it is your duty to answer the second issue Yes.

"*Third.* What are the ten shares of stock worth? By the terms of the agreement the ten shares of stock are to be sold and whatever it is worth to be credited on this note. You have here the evidence about that. Colonel Hinsdale, the plaintiff, swears that he has been up there and given it a thorough examination, and the stock is absolutely worthless; the property of the corporation is in the hands of a receiver, and it is mortgaged much beyond what it is worth. The evidence of the defendant was that the stock was not absolutely worthless, but he did not know what it was worth. He had ceased giving it any attention. You shall consider this in answering the issue, and, as you believe the evidence, you shall say what you consider this stock worth, and so write your answer.

"*Fourth.* 'Has any part of the note been paid?' The answer to the fourth issue is $50. These men agreed to pay these assessments equally. It turns out from the evidence that this defendant has paid $100 more than the plaintiff, and that should be divided. It would make $50 the plaintiff owes the defendant by reason of these assessments, and that should go as a payment on this note.

"*Fifth.* The answer to the fifth issue will be the face value of the note at interest, less the credit of $50.

"The said Jerman contended that, by reason of the said transaction, he and the said Hinsdale became and were copartners; that the said note simply represented the said Hinsdale's contribution to the capital stock of the copartnership, to-wit, said stock; that if said partnership dealings resulted in a total loss of the copartnership assets, each

partner simply lost what he had contributed to the copartnership, and that neither partner could recover from the other by reason of such contribution; and that if the said Hinsdale was entitled to recover upon said note at all, it must be out of the proceeds of the sale of said stock, and from no other source; and that said Hinsdale could, in no event, recover from said Jerman personally until said stock was exhausted.

"The plaintiff contended that the transaction was a loan of $790 by the plaintiff to the defendant, and that he had the right to recover upon and collect the note regardless of the assets of the alleged copartnership, and that the stock was assigned simply as collateral security.

"It was agreed on trial that in case defendant was liable on the note, he was entitled to a credit of $50, being one-half of the $100 assessment which had been paid by defendant, and for one-half of which plaintiff was liable."

The jury responded to issues as shown above.

Defendant moved for new trial—

1. For error in refusing to submit issues on the partnership tendered by him.

2. For error in not holding the transaction in the evidence was a partnership, and that by terms of agreement defendant was not responsible on the note.

3. The charge of the Court that defendant was responsible on the note, even if plaintiff and defendant were partners.

Motion overruled, and defendant excepted. Judgment on verdict for plaintiff, and defendant appealed.

*Messrs. R. O. Burton* and *Armistead Jones*, for plaintiff.

*Messrs. Haywood & Haywood* and *Thomas M. Argo*, for defendant (appellant).

PER CURIAM.: The note set out in the complaint, with the contemporaneous agreement between the plaintiff and

defendant, which the latter put in evidence, constituted the contract between the parties to this action. We think the construction put by his Honor on this written contract was correct, and that the transaction was merely a loan of money, secured by collaterals which have become worthless, thus leaving no course open to the plaintiff to recover the money he loaned to defendant, except to enforce the secondary liability of the maker of the note. It seems to us very evident that he has the right so to do.          Affirmed.